**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**


ROBERT M. CIKRAJI, et al.,       :

      Plaintiffs,          :       Case No.  3:09cv00066

 vs.                    :       District Judge Walter Herbert Rice
                                   Magistrate Judge Sharon L. Ovington

THOMAS VICKERS, et al.,       :

      Defendants.       :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

Plaintiff Robert M. Cikraji, a resident of Dayton, Ohio, brings this case pro se on his own behalf and purportedly as the "Victim Representative of Group of Victims Identified in Redacted Documents In the Matter of the Extradition of Jean Succar Kuri (In the United States District Court, Arizona)."  (Doc. #1 at 1).  Defendants include six individuals who do not reside in Ohio:  Thomas Vickers, a resident of Longport, New Jersey; Michael Anderson and Lynette Anderson, residents of Fairmont, West Virginia; Dominic Munofo, a resident of Wood Ridge, New Jersey; and Victor Panteleo and Terri Panteleo, residents of Darien, Illinois.  The Complaint also names as a Defendant Gregory G. Lockhart, United States Attorney for the Southern District of Ohio along with several Defendants – individuals and business – located in Cancun, Mexico.

The case is presently pending upon Defendants Vickers and the Andersons'

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Motion to Dismiss (Doc. #18), Defendants Munofo and the Panteleos' Motion to Dismiss (Doc. #23), and Defendant Lockhart's Motion to Dismiss (Doc. #20); Cikraji's Responses (Doc. #s 25, 26, 27); Defendants' Replies (Doc. #s 30, 31, 32); Cikraji's Motion to File Amended Complaint (Doc. #29) and Defendants Vickers and the Andersons' Memorandum in Opposition (Doc. #33); several additional Motions filed by Cikraji (Doc. #s 28, 35, 38, 41); and the record as a whole.

## II.    **The Complaint**

The preamble to Cikraji's Complaint states:

> This case involves the most egregious of conduct. The defendants are individuals who have directly aided and abetted and concealed, the sexual abuse and exploitation of the most vulnerable of the world, the indigent, indigenous Mayan children of the Yucatan peninsula, through rape, prostitution, pornographic videotaping and photographing and emotional abuse via threats and intimidation. The front for these activities is a condominium and hotel operation that markets its operations in Ohio and whose bank holds the property trust accounts that has agent offices in the Greater Dayton area. Defendants have utilized a system of fraudulent and bogus accounts to further and advance a racketeering activity of an association of individuals located in the United States and Mexico.

(Doc. #1 at 3).

Cikraji is one of many owners of units in the condominium and hotel operation referred to in the Complaint as "Solymar" or variations of Solymar. *Id*. The Complaint names as Defendants Condominium Solymar of Cancun, Quintana Roo, Mexico; and Arena Blanca, aka Solymar Resorts of Cancun, Quintana Roo, Mexico. Plaintiff alleges, "Defendant Condominium Solymar ... permits a hotel type operation to function on its property. Defendant Solymar Hotel, aka Solymar Resorts advertises by internet into the United States of America and into Dayton, Montgomery County Ohio, their most notable agent is the American Automobile Association, office located at 825 S. Ludlow Ave., Dayton, Montgomery County Ohio." (Doc. #1 at ¶9). Cikraji further alleges, "Defendant Arena Blanca aka Solymar Resorts, is a corporate name by which the hotel activity

2

functions within the condominium complex and which operates under various names referred as Solymar, Solymar Resorts, etc., which markets it's [sic] hotel operation throughout the United States by travel agents and wholesalers such as Apple Vacations Inc., with principal Dayton area representative the American Automobile Association office located at 825 S. Ludlow Ave., Dayton, Montgomery County Ohio." *Id*. at ¶10.

Cikraji states that Defendants Vickers, the Andersons, Munofo, and the Panteleos are owners of units at the Solymar Condominium. Cikraji alleges that these Defendants "under pretext of law have represented to others that they possessed or possess the right and authority to manage the interests of the complex heretofore known as Solymar Condominiums." (Doc. #1 at ¶16). Cikraji claims that these Defendants "have without legal authority converted assets of Solymar to their own use for the purpose of committing offenses listed as predicate offenses pursuant to the Racketeering Influenced Corrupt Organizations Act." *Id*.

Cikraji explains that the principal owner of the hotel operation conducted by Solymar Condominium is Jean Succar Kuri. In February 2004 Kuri was arrested in the United States "on multiple charges regarding child prostitution, sexual offenses against children and child pornography in Mexico." *Id*. at ¶17. According to the Complaint, following Kuri's arrest, he underwent extradition proceedings in the United States District Court for Arizona and was eventually returned to Mexico where "he has been held in a maximum security facility pending findings on multiple sexually related offenses against children on the property of Solymar Condominium." *Id*. "The sexual abuse of children at the complex had been occurring for over ten years." *Id*. at ¶19.

Cikraji alleges that Defendant Thomas was an associate of Kuri. Defendant Thomas allegedly oversaw the removal of Kuri's personal property from the grounds of the Solymar Condominium shortly after the charges of sexual abuse became public. The Complaint continues:

> A group of owners of units at the Solymar Condominium complex
> referred to as S.O.A. (Solymar Owners Association) called an ownership

meeting at the Omni Hotel in Cancun on February 21, 2004 for the purposes
of addressing the multitude of issues confronting the condominium complex
in light of the activities of Jean Succar Kuri and Thomas Vickers and others
associated with the hotel operation. The existing Vigilance Committee that
included Thomas Vickers was unwilling to address the problems caused by
Jean Succar Kuri and his hotel operation. The meeting was conducted
according to law and the individuals were intent on addressing all concerns
regarding the direct and indirect involvement of the condominium complex
in the sordid acts being addressed in the courts and the media.

(Doc. #1 at ¶27). After this meeting the owners returned to the Solymar complex and

found the administrative office closed and Defendant Vickers and a "multitude of

Mexican males" guarding the entry to the office. *Id.* at ¶28. Cikraji alleges this was done

to protect the administrative office while it was emptied of documents and to intimidate

the owners.

One result of the ownership meeting was that a new Vigilance Committee was

elected apparently by owners who had not been involved with Kuri or his activities.

Cikraji also explains, "Vigilance Committees operate much like a Board of Directors or

Board of Trustees." *Id.* at ¶27.

The Complaint further describes various events relating to Kuri and to certain

illegal activities, all of which allegedly occurred at the Solymar complex in Cancun,

Mexico. These activities included an armed assault (ordered by Kuri's brother) and a

resulting gunfight on complex property. At the time the gunfight broke out, "two

American college coeds were in the complex swimming pool...." (Doc. #1 at ¶33). At

some point, the "United States consulate office in Cancun issued a travel warning

regarding Solymar to the major wholesalers in the United States, about the dangers

presented at Solymar. The college coeds involved in the gunfight were transported out of

the area." *Id.* at ¶37.

Cikraji alleges that Defendants Vickers, the Andersons, Munofo, the Panteleos,

and others "have by concealment, obfuscation, abuse of the Mexican legal process

converted and misappropriated assets in furtherance of racketeering.... These activities

have transpired to the detriment of owners who wanted a peaceful relationship with neighbors and to engage in solely lawful activity. Defendants have converted the assets of the Solymar complex to their own use and have constructively converted the property to a criminal enterprise...." *Id*. at ¶38.

Cikraji further asserts that Defendants have refused to furnish compete and detailed accounting records concerning the use of monies entrusted to them. *Id*. at ¶39. According to Cikraji, "Defendant Banamex with employee Carmen Elizabeth Triay Torres, Administrator Fiduciary, has entered into an agreement with the defendants that foreign owners of property at Solymar Condominiums maintain a trust account with Banamex exclusively. Foreign owners of property at Solymar are denied the ability to vote at any meeting called by the Solymar ownership unless they maintain a trust with Banamex and pay trust fees. This activity is antitrust violation of the Sherman Act." *Id*. Cikraji's Complaint sheds little light on Defendant Banamex, other than indicating it has a trust office in Cancun, Mexico and "is a wholly owned agent of Citicorp, Citigroup, Citifinancial, with offices in Dayton, primary location, 444 Main St., Dayton..., Ohio." *Id*. at ¶12.

The Complaint sets forth seven separate counts, six of which either mention RICO or relate to purported RICO violations; the remaining count asserts a violation of the Sherman Antitrust Act. (Doc. #1 at ¶s 50-56). The Complaint seeks, in part, the appointment of "a receiver under the direction of the civil division of the United States Department of Justice to audit the records of Solymar Condominium and to determine the civil and criminal liability of defendants in the matter of aiding and abetting child pornography, child prostitution, witness intimidation, money laundering..., conversion of assets, breach of contract, violation of fiduciary duty, violation of the Sherman Act and trespass to accounts and property." (Doc. #1 at p. 13). The Complaint further seeks, in part, an Order (1) seizing Defendants' assets that have been used to advance their racketeering activities located at the Solymar Condominiums; (2) divesting from the

Solymar complex the real property used in violation of RICO; (3) determining the amount of the victims' damages and impose treble damages on Defendants under RICO; (4) compensating the innocent owners; and (5) imposing treble damages as warranted under the Sherman Act.

## III.     Personal Jurisdiction

### A.     The Parties' Contentions

Defendants Vickers and the Andersons (Doc. #18) and Defendant Munofo and the Panteleos (Doc. #23) contend that Cikraji's Complaint fails to allege facts sufficient to demonstrate that this Court may exercise personal jurisdiction over them under Ohio's long-arm statute or the Due Process Clause to the Fourteenth Amendment to the United States.

Defendant Vickers resides in New Jersey; the Andersons reside in West Virginia. (Doc. #18 at p. 2; *see* Doc. #1 at p. 4).  Defendant Munofo resides in New Jersey; the Panteleos reside in Illinois.  (Doc. #23 at p. 3; *see* Doc. #1 at p. 4).

Cikraji asserts that Defendants Thomas Vickers and the Andersons present themselves as members of the Vigilance Committee of Solymar Condominium, and he alleges that they conduct a property management business from the Solymar Condominium site.  (Doc. #25).  Cikraji argues, "Exhibit 2 in Case Exhibits filed with this court is a copy from their interactive website that has continuously marketed their property to individuals in the Southern District of Ohio and around the world for at least eight years."  (Doc. #25 at p.1). Cikraji's reference to Exhibit 2 is apparently directed at his proposed Amended Complaint, Exhibit 2, which is a copy of an advertisement for Solymar Beach Resorts.  (Doc. #29, Exh. 2). Cikraji further argues, "The hotel operation also has an interactive website soliciting business in the Southern District of Ohio." (Doc. #25, p. 1).

### B.     Applicable Burden and Standards of Review

Plaintiff Cikraji bears the burden of establishing this Court has personal jurisdiction over these Defendants. *See Neogen Corp. v. Neo Gen Screenwriting, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

The parties have not conducted discovery at this point in the case, and this Court has not held an evidentiary hearing concerning whether it may exercise personal jurisdiction over these Defendants. Consequently, Cikraji "'need only make a prima facie showing of jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (*Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 980 (6th Cir. 1992) (quoting *Compuserve Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). Cikraji "can meet this burden 'by establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction.'" *Neogen*, 282 F.3d at 887 (quoting in part *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n.*, 819 F.2d 434, 437 (3rd Cir. 1987)).

At this early non-hearing stage of the case, the Court construes the Complaint and evidence of record in the light most favorable to Cikraji. *Neogen*, 282 F.3d at 887; *see Conti*, 977 F.2d at 980-81. The Court "'does not weigh the controverting assertions of the party seeking dismissal,'" *Compuserve*, 89 F.3d at 1262 (6th Cir. 1996)(quoting *Conti*, 977 F.2d at 1459), because the Court strives "'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.' Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff ... alleges collectively fail to state a prima facie case for jurisdiction.'" *Compuserve*, 89 F.3d at 1262 (quoting in part *Conti*, 977 F.2d at 1459).

"Personal jurisdiction must be analyzed and established over each defendant independently." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006).

## C.    Jurisdictional Law and Analysis

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction exists 'if the defendant is amenable to service of process under the [forum] state's long-arm jurisdiction and if the exercise of

personal jurisdiction would not deny the defendant due process.'" *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)(citation omitted).

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002).

"General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id*. (quoting in part *Third Natl. Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989)(internal quotation marks omitted)).

Cikraji's Complaint does not allege that Defendants Vickers, the Andersons, Munofo, or the Panteleos reside in Ohio, own property in Ohio, or have any – let alone continuous and systematic – contacts with Ohio. Instead, the Complaint indicates that these Defendants do not reside in Ohio but instead reside in either New Jersey, West Virginia, or Illinois and that their activities as members of the Vigilance Committee of Solymar Condominium occurred in Mexico. The internet advertisement upon which Cikraji relies does not mention the Vigilance Committee of Solymar Condominium or any of these Defendants by name. Accepting this document at face value and construing it in Cikraji's favor does not reveal the occurrence or existence of continuous and systematic contacts by these Defendants with Ohio. "Maintain[ing] a website that is accessible to anyone over the Internet is insufficient to justify general personal jurisdiction." *Bird*, 289 F.3d at 874. Cikraji alleges no other facts or circumstances that would trigger this Court's general personal jurisdiction over these Defendants. *See Bird*, 289 F.3d at 873-74.

"Specific personal jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Youn v. Track, Inc.,* 324 F.3d 409, 418 (6th Cir. 2003) (quoting in part

*Heliocopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868 (1984)); *see Cadle Co. v. Schlictmann*, 123 Fed.Appx. 675, 677 (6th Cir. 2005)("Specific jurisdiction exists if the defendant's contacts with the forum state relate to the case at hand.").  A two-step inquiry applies: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause."  *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).

Cikraji does not specifically argue that his allegations satisfy Ohio's long-arm statute, Ohio Rev. Code §2307.382(A).  His Complaint does not show that Defendants Vickers, the Andersons, Munofo, or the Panteleos have any contacts with Ohio or caused any tortious injury in Ohio.  The Complaint therefore fails to show that these Defendants have engaged in any of the activities described in Ohio Rev. Code §2307.382(A)(1)-(7). Cikraji's reliance on an Internet advertisement for Solymar Beach Resort does not reveal that any of these Defendants transacted business in Ohio or regularly solicits business in Ohio or engaged in any other conduct described in §2307.382(A)(1)-(7) because the Internet advertisement fails to suggest even the slightest connection between these Defendants and Ohio.  *See* Doc. #29, Exh. 2.  In addition, Cikraji has not alleged that any of these Defendants have an interest in, use, or possess real property in Ohio as described in §2307.382(A)(8).  And Cikraji has not alleged that these Defendants have contracted to insure any person, property, or risk located in Ohio as required by §2307.382(A)(9). Nearly all of Cikraji's allegations concern events and misconduct in Cancun, Mexico, rather than in Ohio.  The only exception is the federal extradition proceeding in Arizona concerning Jean Succar Kuri, which obviously had no connection to Ohio.  For all these reasons, Cikraji has not met his burden of showing that Ohio's long-arm statute authorizes the exercise of personal jurisdiction over Defendants Vickers, the Andersons, Munofo, or the Panteleos.

Turning to the constitutional analysis, Cikraji's allegations fail to show that the

exercise of personal jurisdiction over these Defendants satisfies the Due Process Clause.

"The bedrock principle of personal jurisdiction due process analysis is that when the Defendant is not physically present in the forum, she [or he] must have 'certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc*., 324 F.3d 409, 417 (6th Cir. 2003) (quoting, in part, *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945))(other citations omitted). To satisfy this bedrock principle, Cikraji must make three showings:

1.  The defendant must have purposefully availed himself of the privilege of acting in Ohio or causing a consequence in Ohio;

2.  The cause of action must arise from the defendant's activities in Ohio; and

3.  The defendant's acts or the consequences caused by the defendant must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable.

*Youn*, 324 F.3d at 418 (relying on *Southern Machine Company v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968)).

Cikraji does not specifically argue that Defendants Vickers, the Andersons, Munofo, or the Panteleos have engaged in conduct sufficient to show purposeful availment. The Complaint reveals no direct contact between these Defendants and Ohio. Assuming that these Defendants are members of Vigilance Committee of Solymar Condominium – which is not a named defendant in this case – the Complaint reveals no fact tending to show that these Defendants, through the Vigilance Committee, had any contact with Ohio. The allegations in the Complaint concerning the Vigilance Committee concern events that did not occur in Ohio but instead occurred in Cancun, Mexico. *See* Doc. #1 at pp. 6-8.

Assuming in Cikraji's favor that the Solymar Beach Resorts reached into Ohio by way of an Internet advertisement, *see* Doc. #29, Exh. 2, the circumstances described by

Cikraji's Complaint and Memoranda fail to connect this Internet advertisement with these Defendants or with the Vigilance Committee or with any sales or marketing activities Defendants conducted by way of the Vigilance Committee in Ohio (or any other state). The Internet advertisement does not mention any of these Defendants by name and does not mention the Vigilance Committee of Solymar Condominium. *See id.* Neither the contacts numbers, addresses, nor any other information set forth in the advertisement have any stated connection to Ohio or to these Defendants or to the Vigilance Committee of Solymar Condominium. Asking one question – who is reaching into Ohio through this Internet advertisement? – illustrates the lack of purposeful availment because whatever the correct answer is, it is not any of these Defendants. The Internet advertisement and the Complaint simply provide no basis to reasonably infer that any of these Defendants or their activities with the Vigilance Committee used this Internet advertisement to reach into Ohio.

Lastly, attached to Cikraji's proposed Amended Complaint are copies of emails. These emails concern matters related to Solymar Condominium in Mexico and do not show purposeful availment. These few emails contacts were at most attenuated and fortuitous; they arose solely due to Cikraji's choice to live in Ohio, not because any Defendant sought to further their business interests or create substantial consequences in Ohio. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000); *see also Reynolds v. International Am. Athletic Fed.*, 23 F.3d 1110, 1118 (6th Cir. 1994)(existence of "a contract with an out-of-state party, standing alone, is not sufficient to establish minimum contacts.").

For all the above reasons, Cikraji has not shown that Defendants Vickers, the Andersons, Munofo, or the Panteleos purposefully availed themselves of the privilege of acting in Ohio.

Cikraji also fails to show that his claims arise from any contacts these Defendants have with Ohio. "If a defendant's contacts with the forum state are related to the

operative facts of the controversy, then an action will be deemed to have arisen from those contracts." *Bird*, 289 F.3d at 875 (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)). "This factor does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Id.* (quoting, in part, *Third Nat'l. Bank in Nashville v. WEDGE Group*, 882 F.2d 1087, 1091 (6th Cir. 1989)) (other citation omitted). The operative facts alleged in Cikraji's Complaint have no connection to Ohio or to any activities by these Defendants' in Ohio, let alone a substantial connection. *See id*; *see also Calphalon*, 228 F.3d at 724. The Complaint focuses on events and misconduct in Cancun, Mexico by Jean Succar Kuri and his associates, none of whom are defendants in this case and none of whom, under Cikraji's allegations, have contacts with Ohio. The Complaint, moreover, mainly seeks to raise RICO claims arising from events and misconduct in Mexico, especially aiding and abetting child prostitution, child pornography, and child trafficking. The Complaint does not connect such activities with Ohio in any way. Cikraji also raises his RICO claims as the self-described "Victim Representative of Group of Victims Identified in Redacted Documents In the Matter of the Extradition of Jean Succar Kuri (in the United States District Court, Arizona)." (Doc. #1 at 1). In that capacity, Cikraji's RICO and other claims have no connection, let alone a substantial connection, with Ohio or with any activity by Defendants in Ohio. Rather, the RICO and other claims arise from events and activities in Mexico. Cikraji has therefore failed to demonstrate that his claims arise from Defendants' activities in Ohio.

Accordingly, Cikraji has not demonstrated the existence of a prima facie case of personal jurisdiction over Defendants Vickers, the Andersons, Munofo, or the Panteleos.

**IV.    Defendant Lockhart's Motion to Dismiss**

Defendant Lockhart contends that Cikraji's Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state a claim upon which relief

could be granted against him.  He reasons that none of the statutes referred to in the Complaint provides a legal basis for bringing the U.S. Attorney for the Southern District of Ohio into this case as a party defendant.

After identifying Defendant Lockhart as the United States Attorney for the Southern District of Ohio and providing an address, the Complaint explains that he "is named for the purpose of implementing the provisions of the Violence Against Women and Department of Justice Reauthorization Act of 2005 (sec. 103) and the Federal Civil Asset Forfeiture Reform Act of 2000 (Title 18 United States Code Section 2)[.] Furthermore pursuant to Title 18 United States Code 981(e), Plaintiff is seeking restitution for damages suffered by victims."  (Doc. #1 at ¶14).

Cikraji's response to Defendant Lockhart's Motion does not provide any insight into the legal basis for the claims he seeks to raise against Defendant Lockhart.  Cikraji instead reiterates some of the allegations of his Complaint, which do not implicate any misconduct or other activities by (or about) Defendant Lockhart.  *See* Doc. #27 at pp. 1-2. Assuming the truth of Cikraji's allegations and construing them liberally in his favor, *see Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009), does not reveal the existence of a valid civil cause of action against Defendant Lockhart or the Office of the United States Attorney for the Southern District of Ohio.  None of the sexual abuse victims identified by the United States District Court in Arizona referred to in the Complaint are alleged to have any contact with the Southern District of Ohio, with Defendant Lockhart, or with the Office of the United States Attorney for the Southern District of Ohio.  The Complaint describes criminal activity that allegedly occurred in Mexico, not Ohio.  The Complaint, moreover, does not allege that Defendant Lockhart has done anything wrong or harmed Cikraji in any way, and it therefore fails to state a plausible claim against him.  *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) ("[T]o survive a motion to dismiss a complaint must contain ... 'enough facts to state a claim to relief that is plausible...'")(quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct.

1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).

Lastly, Cikraji apparently seeks to use Defendant Lockhart or his Office to obtain certain evidence used during the Jean Succar Kuri's extradition proceedings in Arizona. *See* Doc. #27. In light of the other conclusions reached in the instant Report and the resulting recommendation to dismiss this case, and given the lack of a valid claim against Defendant Lockhart, no statutory or other legal basis would support an Order compelling Defendant Lockhart or the United States Attorney for the Southern District of Ohio to travel to Arizona or to otherwise obtain the Kuri-extradition evidence.

Accordingly, Defendant Lockhart's Motion to Dismiss is well taken.

## V. <u>Venue and Service</u>

Defendants Vickers, the Andersons, Munofo, the Panteleos contend that Cikraji cannot establish that venue of his claims in the Southern District of Ohio is proper under 28 U.S.C. §1391, RICO, or the Sherman Act.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406(a).

Cikraji points out that under §1391(d) an alien may be sued in any district. Cikraji argues that Solymar Condominium, Solymar Resorts, Arena Blanca, Banamex, Inna German, Sandra Arriaga, and Carmen Torres are aliens and consequently his claims against them are properly venued in the Southern District of Ohio. Cikraji reiterates his allegations concerning the criminal activities and other events that occurred in Mexico, and the extradition proceedings of Jean Succar Kuri. And Cikraji describes his own activities in Ohio, such as his presentation of "seven scientific papers at the Ohio Academy of Science...," his presentations at schools and libraries throughout Southern Japan, and his presentation of papers in South American and Europe. (Doc. #26 at pp. 3-4).

Cikraji correctly observes that under 28 U.S.C. §1391(d), "An alien may be sued

14

in any district."  However, the Complaint does not allege that Defendants Vickers, the Andersons, Munofo, and the Panteleos are aliens.  The Complaint merely indicates that these Defendants are residents of either New Jersey, West Virginia, or Illinois, and Cikraji does not assert in his Memoranda in Opposition that these Defendants are aliens.  Section 1391(d) therefore does not apply to Defendants Vickers, the Andersons, Munofo, and the Panteleos.

Assuming, in Cikraji's favor, that §1391(d) applies to at least one of the other named defendants, does not assist him in establishing venue in the Southern District of Ohio because when "aliens and non-aliens are joined as defendants, venue for the entire action is proper in any district where it is correct as to non-alien defendant."  *Kazenercom TOO v. Turan Petroleum, Inc.*, 5990 F.Supp.2d 153, 160 n.9 (D.D.C. 2008)(quoting *Flag Co. v. Maynard*, 376 F.Supp.2d 849, 857 (N.D. Ill. 2005)); *see Hall v. Tyco Intern. Ltd.*, 223 F.R.D. 219, 231 (M.D.N.C. 2004); *see also In re Triton Ltd. Securities Litigation*, 70 F.Supp.2d 678, 683 (E.D. Tex. 1999) (and cases cited therein); *Watkins v. Kajima Intern. Inc.*, 2007 WL 865823 at *4 (M.D. Tenn 2007).  For many reasons, Cikraji has not alleged facts or circumstances indicating that venue is proper in the Southern District of Ohio as to any of the non-alien Defendants.

First, Defendants Vickers, the Andersons, Munofo, and the Panteleos do not reside in Ohio; they reside in other states, according to the Complaint.  Venue is therefore not proper under 28 U.S.C. §1391(a)(1) or (b)(1).[2]  Although Defendant Lockhart is in Ohio, Plaintiff's Complaint fails to state a claim for relief against him.  *Supra*, IV.  Consequently, his presence in Ohio has no bearing on the venue analysis.

Second, the events alleged in the Complaint occurred in Cancun, Mexico or during the extradition proceedings of Jean Succar Kuri in Arizona.  None of the events described in the Complaint or otherwise alleged by Cikraji occurred in the Southern District of

---

[2]  Although it appears that the Complaint only alleges federal questions, Defendants Munofo and the Panteleos propose (doc. #23 at p.9) that venue is improper under §1391(a), which applies to diversity cases.  In the interests of thoroughness, both §§1391(a) and (b) are considered herein.

Ohio.  Cikraji, therefore, has not shown that a substantial part of the events or omissions at issue, or a substantial part of the property at issue, is situated in this District.  As a result, venue is not warranted under 28 U.S.C. §1391(a)(2), (b)(2).

Third, Cikraji's status as the plaintiff in this case, his Ohio residence, and his activities in Ohio play no role in determining whether venue is proper under the plain language of 28 U.S.C. §1391.

Fourth, this Court lacks personal jurisdiction over Defendants Vickers, the Andersons, Munofo, or the Panteleos.  *Supra*, §III.  Venue is therefore not warranted under 28 U.S.C. §1391(a)(3).

Fifth, none of the Defendants "may be found" in Southern Ohio, and as a result, venue is not proper under §1391(b)(3).

Sixth, Cikraji's Complaint and other allegations do not show that Defendants Vickers, the Andersons, Munofo, and the Panteleos reside in Ohio, have agents in Ohio, or transact their affairs in Ohio.[3]  Consequently, Cikraji's allegations do not show that venue is proper in the Southern District of Ohio under RICO's venue provision.  *See United Liberty Life Ins. Co. v. Pinnacle West Capital Corp*., 149 F.R.D. 558, 562 (S.D. Ohio)(Rubin, D.J.).

Seventh, because Cikraji's allegations do not show that Defendants Vickers, the Andersons, Munofo, and the Panteleos reside in Ohio or have an agent in Ohio, the Sherman Act's venue provision does not provide a basis for venue in the Southern District of Ohio.  *See* 15 U.S.C. §15.[4]

Lastly, Cikraji has not argued for or sought a transfer of this case in the interest of

---

[3]  RICO's venue provision states, "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  18 U.S.C. § 1965(a).

[4]  This venue statute provides, in pertinent part, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to amount in controversy..."

justice to any other district or division.

Accordingly, venue of this case is not proper in the Southern District of Ohio and dismissal is warranted under 28 U.S.C. §1406(a).

## VI.     **Remaining Motions and Defendants**

Beginning with Cikraji's Motion to File Amended Complaint, his proposed Amended Complaint seeks to add as a defendant, Sandra Arriaga, as the "agent representative of the American defendants in the instant matter."  (Doc. #29 at 1).

Leave to amend a complaint is freely granted as justice so requires.  Fed. R. Civ. P. 15(a)(2).  "However, leave to amend may be denied where the amendment would be futile."  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)(citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).  Cikraji's proposed amended complaint contains the same factual allegations and the same causes of action as his original complaint.  He merely seeks to add Sandra Arriaga as a defendant.  Cikraji's proposed amended Complaint does not correct the deficiencies identified herein and consequently, allowing him to amend his Complaint would be futile and, hence, unwarranted.  *See Yuhasz*, 341 F.3d at 569.[5]

Cikraji also seeks an Order imposing Default Judgment upon Defendants Arena Blanca and Condominium Solymar.  He states that service was effected upon these Defendants on June 11, 2009 by process server and that Monica Vazquez accepted service on behalf of both Defendants.  (Doc. #35).  There are, however, several problems with the service Cikraji has attempted, not only on Arena Blanca and Condominium Solymar but also on Inna German, Banamex, and Carmen Torres, all of whom Cikraji attempted to serve personally in Mexico through a process server.

---

[5]  Although the Motion to File Amended Complaint lacks merit, the above jurisdictional analysis, *supra*, §III, considered – in Cikraji's favor – whether the documents attached to his proposed amended Complaint provide any ground to exercise personal jurisdiction over Defendants Vickers, Munofo, the Anderson, or the Panteleos.

First, the certificates of service completed by the process service indicates that she served Inna German, Condominium Solymar, Arena Blanca, Banamex, and Carmen Torres on July 13, 2009. (Doc. #22). Although the process server indicated she received the summons (presumably from Cikraji) on June 10, 2009, *id*., she did not actually serve the summons until July 13, 2009. Such service was untimely because it was not accomplished within 120 days after the Complaint was filed in this case (on February 20, 2009) as required by Fed. R. Civ. P. 4(m). Cikraji has not explained why he waited until June 10, 2009 to provide the service forms to the process server. He did not seek leave of the Court to effect service after the 120-day deadline expired, and he has not otherwise shown good cause to permit an extension of this deadline as to the named defendants who reside or conduct business in Mexico. In this situation, Rule 4(m) mandates dismissal of the Complaint against these named defendants.

Second, Cikraji's attempt to effect <u>personal</u> service on these business entities – Inna German, Condominium Solymar, Arena Blanca, Banamex – outside any United States judicial district is not permitted under Fed. R. Civ. P. 4(h)(2). *See Studio A. Entertainment, Inc. v. Active Distributors, Inc*., 2008 WL 162785 at *3 n.2 (N.D. Ohio 2008).

Third, Cikraji's status as a pro se litigant does not relieve him of the burden to effect proper service under Rule 4 and to demonstrate the occurrence of such service as required by Rule 4(l). *Studio A. Entertainment* cogently summarized the significance and need for effective service as follows:

> The requirement of proper service of process 'is not some mindless technicality.' *Friedman v. Estate of Presser,* 929 F.2d 1151, 1156 (6th Cir. 1991) (quotations omitted). Indeed, 'the Sixth Circuit and other circuits have held that service of summons and complaint must meet constitutional due process and the requirements of the federal rules in order for jurisdiction to exist over defendant.' *See German Free State of Bavaria v. Toyobo Co.,* No. 1:06-cv-407, 2007 U.S. Dist. LEXIS 19828, *11-12, 2007 WL 851872 (W.D. Mich. March 20, 2007) (citing *Mason v. Star Bank,* 1994 Bankr.LEXIS 1394 (N.D.Ohio 1994) (listing circuit cases finding that

> defendant's actual knowledge of a suit does not satisfy service of process requirements))).  Actual knowledge of a complaint, under Sixth Circuit precedent, does not substitute for proper service of process under Rule 4.

*Studio A Entertainment*, 2008 WL 162785 at * 2.

As to the named individual Defendant, Carmen Torres, Cikraji has shown that the service attempted on her in Mexico was not proper under any of the three methods provided by Fed. R. Civ. P. 4(f).  *See* Doc. #35.  In addition, the service processor's affidavit does not clearly indicate that service was actually accomplished on Carmen Torres personally because the service processor did not check the correct box to indicate such service was in fact accomplished.  (Doc. #35, service affidavit for Carmen Torres). Instead, the service processor checked the box for service on organizations and wrote the name Carmen Torres in the line provided.  This mistake creates some concern whether Carmen Torres actually received notice of Cikraji's Complaint and claims against her. Similarly, the service for  Inna German was not accepted by a person authorized to accept such service but was accepted by "Inna German" on behalf of "Real Man."  (Doc. #35, service affidavit for Inna German).  There is, consequently, some concern whether Inna German actually received notice of Cikraji's Complaint.

Fourth, Cikraji appears to argue that service on Solymar Condominium and Arena Blanca was proper because Defendants Vickers, Munofo, the Andersons, and the Panteleos, were legal representatives of these entities in light of their status as members of the Condominiums Solymar Vigilance Committee.  Cikraji reasons that the proper service of summons on these individuals within the United States constituted proper service on Solymar Condominium and Arena Blanca.  Contrary to Cikraji's attempt to serve in this manner, nothing in the plain language of Rule 4(f), (h), or (l) permits service on a foreign business entity through service within the United States on members of a Vigilance Committee or other similar committee.

Fifth, even if service on the defendants in Mexico was proper under Rule 4 and constitutional, Cikraji is not entitled to a Judgment of Default against them at the present

time. "When a party 'has failed to plead or otherwise defend...' entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998); *see Shepard Claims Service*, 796 F.2d at 193 ("entry of default is just the first procedural step on the road to obtaining a default judgment..."). Because no entry of default has occurred in this case, Cikraji's Motion For Default Judgment is contrary to Rule 55.

Accordingly, Plaintiff's Motion for Default Judgment lacks merit and Plaintiff's Complaint against Arena Blanca, Condominium Solymar, Inna German, Banamex, and Carmen Torres should be dismissed for lack of proper service and for lack of timely service under Fed. R. Civ. P. 4(m).

## IT IS THEREFORE RECOMMENDED THAT:

1.     Defendants Vickers and the Andersons' Motion to Dismiss (Doc. #18), Defendants Munofo and the Panteleos's Motion to Dismiss (Doc. #23), and Defendant Lockhart's Motion to Dismiss (Doc. #20) be GRANTED;

2.     Cikraji's Motion to File Amended Complaint (Doc. #29) be DENIED;

3.     Plaintiff's Complaint against Defendants Arena Blanca, Condominium Solymar, Inna German, Banamex, and Carmen Torres be DISMISSED for lack of proper service and for lack of timely service under Fed. R. Civ. P. 4(m);

4.     Cikraji's remaining Motions (Doc. #s 28, 35, 38, 41) be DENIED as moot; and

5.     Plaintiff's Complaint be DISMISSED and this case be terminated on the docket of this Court.

January 5, 2010

       s/ Sharon L. Ovington
       Sharon L. Ovington
       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).